GULF OIL CORPORATION, and Gulf
Refining Company, Plaintiff,

v.

FEDERAL POWER COMMISSION
et al., Defendant.

Civ. A. 515.

United States District Court,
District of Columbia.

Feb. 18, 1955.

Jesse P. Luton, Jr., Ft. Worth, Tex.,
Mac Asbill, Washington, D. C., for plaintiff.

Willard W. Gatchell, Federal Power
Commission, Washington, D. C., for defendant.

KIRKLAND, District Judge.

In the case of Gulf Oil Corporation
and Gulf Refining Company, plaintiff
v. Federal Power Commission, C.A.No.
515–55, the plaintiff herein under date
of February 4, 1955, filed in this Court
a complaint for declaratory judgment,
injunction and equitable relief, and has
predicated that complaint largely upon
the features and promulgations of an
order designated as 174–B issued by the
Federal Power Commission under date
of December 17, 1954.

The defendant has not answered to
the complaint, but instead the motion for
a preliminary injunction, with accom-

panying points and authorities, has been opposed by the defendant through the filing of points and authorities in opposition on February 14, 1955. Although the matter is here only on motion for a temporary injunction, the force of the argument is virtually that of an application for a permanent injunction.

Interestingly enough, the entire controversy revolves around the recent decision of the United States Supreme Court in the case of Phillips Petroleum Company v. State of Wisconsin, which was decided June 7, 1954, and reported at 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. It is interesting to a trial court to hear the defendant in the cause argue that before the Supreme Court of the United States the Power Commission itself took the position that wholesale transactions, especially at the source of what is known popularly as wet natural gas, were beyond its congressional grant of authority. However, in interpreting the various cases which have been before it, and through Mr. Justice Minton, 347 U.S. at page 682, 74 S.Ct. at page 799, the Supreme Court stated as follows:

"Rather, we believe that the legislative history indicates a congressional intent to give the Commission jurisdiction over the rates of all wholesales of natural gas in interstate commerce, whether by a pipeline company or not and whether occurring before, during, or after transmission by an interstate pipeline company. There can be no dispute that the overriding congressional purpose was to plug the 'gap' in regulation of natural-gas companies resulting from judicial decisions prohibiting, on federal constitutional grounds, state regulation of many of the interstate commerce aspects of the natural-gas business. A significant part of this gap was created by cases holding that 'the regulation of wholesale rates of gas and electrical energy moving in interstate commerce is beyond the constitutional powers of the States' ", citing Interstate Natural Gas Company v. Federal Power Commission, 331 U.S. 682, 689, 67 S.Ct. 1482, 91 L.Ed. 1742.

Further along in its opinion the Court, 347 U.S. at page 685, 74 S.Ct. at page 800, stated:

"Regulation of the sales in interstate commerce for resale made by a so-called independent natural-gas producer is not essentially different from regulation of such sales when made by an affiliate of an interstate pipeline company. In both cases, the rates charged may have a direct and substantial effect on the price paid by the ultimate consumers. Protection of consumers against exploitation at the hands of natural-gas companies was the primary aim of the Natural Gas Act", citing Federal Power Commission v. Hope Natural Gas Company, 320 U.S. 591, 610, 64 S.Ct. 281, 88 L.Ed. 333.

Continuing, 347 U.S. at page 685, 74 S.Ct. at page 801:

"Attempts to weaken this protection by amendatory legislation exempting independent natural-gas producers from federal regulation have repeatedly failed, and we refuse to achieve the same result by a strained interpretation of the existing statutory language."

The Court has quoted from the opinion of the Supreme Court for two purposes: First, the growing tendency in federal jurisdiction is to enlarge the scope of federal power to clearly control those things which upon entering the stream of interstate commerce become part of the volume and flow of interstate commerce. Since the famous case of Schechter Poultry Corporation v. U. S., 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, down to the very latest case of United States v. International Boxing Club of New York, 75 S.Ct. 259, that tendency has been present. Second, even though the Power Commission felt it lacked jurisdiction under the Natural Gas Act, nevertheless the Supreme Court went far beyond even the Commission's

expectation and declared that in the wholesale phase the Commission very clearly and definitely had jurisdiction.

The entire matter before us is pitched upon the effect of the broad ruling in the Phillips Petroleum case. The date of the decision was referred to. It becomes important, since the Federal Power Commission, faced with the almost insurmountable task of regulating a very complicated industry, was compelled to exercise its regulatory powers. Accordingly, the Commission modified Order 174 and 174–A by issuing Order 174–B on December 7, 1954, to all those who might be involved.

Read from its four corners, Order 174–B attempts to get some semblance of order and regulation whereby rates, control and supervision of all types of both wet and dry natural gas from sources of supply to ultimate use in interstate commerce might come under general regulating authority.

It is noteworthy that in the Natural Gas Act itself, 15 U.S.C.A. § 717 et seq., there is a provision for suspending rates. One relief which plaintiff is asking is a preliminary injunction. Plaintiff has entered into long-term contracts with escalator clauses touching upon the scale at which plaintiff shall sell either its raw natural gas or its refined natural gas, thus placing itself in the position of possibly receiving strict state supervision or loss of income, or both. Plaintiff is confronted with the problem that if it fails to obey the federal mandate issued by the Federal Power Commission, it subjects itself to very heavy penalties of some $500 a day for disobedience to the same.

In order that we may arrive at a proper posture of the case, in the argument and from the pleadings, the plaintiff contends that it has three types of natural gas. There is one type described as residue gas, which the Court understands are sales of gas after processing has been completed when the wet material, notably sulphur and other carbon compounds are removed from the natural product which nature has provided. We might call that the furnishing of dry gas. Counsel for the plaintiff concedes that under the ruling in the Phillips Petroleum case this type of sale is within the jurisdiction of the Federal Power Commission, and it is in compliance therewith.

■ However, there are two other types of sales or service which plaintiff contends are not within the Phillips Petroleum case. The second is one referred to as type (b). Type (b) is the sale of what has been designated as raw natural gas sold at the wellhead. From the plaintiff's point of view, it is contended that this is the production or the gathering of raw gas and is not gas which flows in interstate commerce. The third type is sold under specific contract to another, and in that specific contract there is the direct requirement that raw gas shall be processed and dry gas shall then flow from the one who purchases in interstate commerce.

If this were a matter of first impression on whether pipelines wholly within a state touching and being attached to other interstate pipelines are subject to interstate commerce regulation, it might raise a serious question. However, with the length and breadth of recent opinions coming from the Supreme Court, it has the general appearance of being in the flow of interstate commerce in natural gas.

Another striking thing about this case is that the Gulf Oil Corporation receives raw gas in the great State of Texas, famous for its size and expansion but having only a few large cities and relatively little manufacturing. One can almost perceive that while Texas has been blessed by nature, the use of its gas is naturally going to flow to the more populous centers of our country and to those great industrial centers in the workshop of America. I point to that because the Court does not feel that the first contention of whether this is intra or interstate is a serious one.

On the other hand, the defendant argues that this Court is ousted of jurisdiction because this is an administrative proceeding and that the federal courts will not give advisory opinions, that is, will not assume jurisdiction unless there is a justiciable claim or controversy. There is merit to that argument. However, this Court is firmly convinced by the holding of Ex parte Young, cited at 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, that where, as here, there is a serious contention made that a company may be in violation of both state and federal regulations in addition to being confronted by a very serious penalty of a heavy daily charge, that it does have a justiciable issue against a possibility that administrative authorities will so delay the determination of an issue as to practically oust such companies from their remedies in federal courts.

It has been urged by the defendant that the only appeal from administrative proceedings of the Federal Power Commission lies by direct appeal to the United States Court of Appeals for the District of Columbia Circuit. That is true, of course, if there is a genuine adversary proceeding. But here the record shows that the Federal Power Commission, confronted with this very drastic, far-reaching opinion of the Phillips Petroleum case issuing out of the Supreme Court on June 7, 1954, had to act with drastic speed, and commendably did so by issuing Order 174. It invited and received opposition, or points and authorities in opposition, to its projected control. On the strength of the briefs received and arguments heard, it promulgated Order 174–A, and then, after argument and further briefs, it issued the modified Order 174–B.

One of the foremost things in this case is that the very points which plaintiff now argues are before the Federal Power Commission for administrative determination. Accordingly, the Court is going to rule, first, that in a proper case where irreparable damage is shown, a federal court is not ousted of jurisdiction to enjoin the improper, capricious and arbitrary action of an administrative hearing. The Court also holds, as a matter of fact and law, that there is pending before the Federal Power Commission a case which will be determinative of the very issues involved here, and that that case has not been finally adjudicated. In a broad sense the administrative remedies of the plaintiff have not been exhausted. And third, and foremost, the plaintiff has not shown by the four corners of this record and by the argument and by proffers of proof that there has been irreparable damage at the present time. Accordingly, the Court will deny the motion of plaintiff for a temporary injunction.